IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MARY KASAL and GEORGE KASAL,

        Plaintiffs,

v.                                       Case No. 17-cv-1001-JPS

STRYKER CORPORATION,
AA INSURANCE COMPANY,
MILES W. GREEN, BB INSURANCE
COMPANY, SENTRY INSURANCE
A MUTUAL COMPANY, and
AURORA HEALTH CARE METRO, INC.,

        Defendants.

**BRIEF OF DEFENDANTS STRYKER CORPORATION AND MILES GREEN
IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND
AND IN FURTHER SUPPORT OF MILES GREEN'S MOTION TO DISMISS**

      This products liability case is properly before this court based on diversity jurisdiction. Plaintiffs Mary and George Kasal ("plaintiffs" or the "Kasals") allege that Mary was injured by equipment manufactured by defendant Stryker Corporation ("Stryker"). There is no dispute that plaintiffs, as Wisconsin citizens, are diverse from Stryker, a citizen of Michigan. Nor is there any question that the amount in controversy exceeds the floor for diversity jurisdiction. If the Kasals and Stryker were the only parties, in other words, subject matter jurisdiction would be uncontested.

      But the Kasals, who named *five* defendants in addition to Stryker, do contest jurisdiction here. Three of those defendants—Mary Kasal's employer, Aurora Health Care Metro, Inc. ("Aurora"), as well as two fictitiously named insurers—can be excluded from the diversity equation at the outset. Aurora never should have been sued in the first place, because worker's

compensation is Mary Kasal's exclusive remedy,[1] and fictional defendants cannot destroy diversity.

That leaves two defendants—former Stryker employee Miles Green ("Green"), and worker's compensation carrier Sentry Casualty Company ("Sentry")—to which plaintiffs hitch their argument for remanding this case to state court. Green and Sentry are both citizens of Wisconsin, but as explained in Stryker's Notice of Removal (Dkt. 1), neither compromises diversity. Green was fraudulently joined because he cannot be liable as asserted in the complaint, which alleges he negligently serviced equipment he was never responsible for servicing. Green moved to dismiss the complaint (Dkt. 6 & 7), and plaintiffs have not even bothered to file an opposition—effectively conceding the inadequacy of their pleading. Sentry, meanwhile, is appropriately realigned as a plaintiff due to its subrogation interest in any recovery from defendants.

Now plaintiffs move to remand the case to state court (Dkt. 17 & 18), but their motion only confirms the merits of removal. Plaintiffs have abandoned their original allegations against Green, manufacturing an entirely new—but equally threadbare—"failure to warn" theory that appears nowhere in the complaint. With respect to Sentry, plaintiffs seek to defeat its subrogation interest based on an alleged failure to cooperate—which simply means that two plaintiffs are competing over their recovery from the defendants. Meanwhile, plaintiffs' own submissions contradict their allegations that Sentry has been in any way uncooperative.

Stryker properly removed this lawsuit to federal court, which is where it should remain. The motion to remand should be denied.

---

[1] Aurora is named in the complaint but was never served. Aurora's employee health plan, the Aurora Health Care, Inc. Health and Welfare Plan by its claims administrator UMR, has appeared in the case (see Dkt. 13, 14, & 16) but will be dismissed by stipulation. *See* Joint Report of Discovery Plan (Dkt. 23) at 2.

**FACTUAL BACKGROUND**

The complaint alleges that Mary Kasal, an Aurora employee, was injured at work on May 11, 2016, when a caster failed at the base of "a piece of equipment called a Navigator," causing it to tip. Compl. (Dkt. 1-1) ¶ 8. The Navigator was manufactured and owned by Stryker, which leased it to Aurora. *Id.* ¶ 9. Mary and her husband George, both citizens of Wisconsin, bring claims against Stryker—which is incorporated, and has its principal place of business, in Michigan—for negligence and strict products liability. *Id.* ¶¶ 1, 2, 13–19.

The negligence claim is also asserted against a second defendant, Green, who is a citizen of Wisconsin. *See id.* ¶¶ 4, 13–14. That cause of action states, in its entirety, that the "caster failure on the Navigator equipment manufactured and leased by Stryker resulting in personal injury to Kasal was caused by the negligence and carelessness of the defendants, and each of them." *See id.* ¶ 14. The complaint's only factual allegation specific to Green is this: "Mr. Green performed and oversaw service and maintenance of Stryker machinery at Aurora Health Care / St. Luke's Hospital." *See id.* ¶ 4. No other cause of action is stated against him.

In reality, Green has never played any role with respect to the service and maintenance of the Navigator at Aurora. *See* Decl. of Miles Green (Dkt. 1-3) ¶ 4. Green served as a sales representative for Stryker from 2012 through 2016, and is not currently employed by the company. *Id.* ¶ 2. In his capacity as sales representative, Green was not responsible for any service, repair, or maintenance of any Stryker equipment, including the Navigator. *Id.* ¶ 4. Rather, he interfaced with hospital and medical personnel on Stryker's behalf to sell and rent equipment, and he supported surgeons and their staff in using Stryker equipment during a case. *Id.* ¶ 3. Green never serviced the Navigator, nor was he responsible for ensuring that the Navigator was properly maintained. *Id.* ¶¶ 4–5.

Sentry, a citizen of the state of Wisconsin, is named only in the third cause of action. That claim acknowledges that Sentry, as the worker's compensation carrier for Aurora, "paid benefits to and on behalf of Mary Kasal" and therefore "may be entitled to share in the proceeds of any recovery pursuant to Wis. Stat. § 102.29." Compl. (Dkt. 1-1) ¶ 21. Plaintiffs allege, however, that Sentry's "subrogation interests should be foreclosed in equity and in law" due to its and Aurora's "failure to cooperate." *Id.* ¶¶ 23–24. Plaintiffs do not otherwise plead any claim against Sentry, or seek any relief from it. Sentry has also brought its own claims against Stryker and Green, seeking judgment and distribution according to the formula set forth in Wis. Stat. § 102.29. *See* Dkt. 1-2 at 42–46.

**ARGUMENT**

**I.     Plaintiffs Cannot Evade Federal Jurisdiction by Manufacturing New and Unpled Theories for Miles Green's Liability.**

Plaintiffs do not even attempt to defend their cursory and factually baseless allegations against Green. Instead, they have chosen to pivot to new facts and a new theory of liability—no more robust than the earlier allegations, but with the added and fatal flaw that they are not even pled in the complaint. Plaintiffs cannot manufacture new allegations to defend against a charge of fraudulent joinder.

"Fraudulent joinder" refers to "a claim against an in-state defendant that simply has no chance of success, whatever the plaintiff's motives" for joining the defendant. *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992). Although a "plaintiff typically may choose its own forum," it "may not join a nondiverse defendant simply to destroy diversity jurisdiction." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 763 (7th Cir. 2009). Therefore, the fraudulent joinder doctrine allows a district court to "disregard, for jurisdictional purposes, the citizenship

4

of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Id.*

Joinder of an in-state defendant "is considered fraudulent, and is therefore disregarded, if the out-of-state defendant can show there exists no 'reasonable possibility that a state court would rule against the [in-state] defendant.'" *Schwartz v. State Farm Mut. Auto. Ins. Co.*, 174 F.3d 875, 878 (7th Cir. 1999) (quoting *Poulos*, 959 F.2d at 73). The standard to establish fraudulent joinder is admittedly strict: a defendant must demonstrate that, "after resolving all issues of fact and law in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant." *Poulos*, 959 F.2d at 73. Despite this "heavy burden," a defendant "need not negate any possible theory that [the plaintiff] might allege in the future: only his present allegations count." *Id.* at 74.

The complaint alleges that the caster's failure was caused by Green's negligence, and the only facts pled about him are that he "performed and oversaw service and maintenance of Stryker machinery at Aurora Health Care / St. Luke's Hospital." Compl. (Dkt. 1-1) ¶ 4. Green's declaration establishes, however, that he played no role with respect to service and maintenance of Stryker machinery. *See* Decl. of Miles Green (Dkt. 1-3) ¶¶ 4–5. Although plaintiffs dismiss Green's declaration as conclusory, they offer no basis for questioning the straightforward account of his job duties for Stryker.

Nor do plaintiffs refute or even acknowledge the applicability of *Faucett v. Ingersoll-Rand Mining & Mach. Co.*, 960 F.2d 653, 654–55 (7th Cir. 1992), in which the Seventh Circuit found fraudulent joinder under these precise circumstances. The in-state plaintiff, allegedly injured on the job by a machine, sued the out-of-state manufacturer in strict liability and an in-state repairman for negligence. The Seventh Circuit agreed with the district court that the

repairman had been fraudulently joined. The repairman's "uncontradicted affidavit, essentially stating that he has had absolutely nothing to do with" the equipment in question, was "sufficient to establish fraudulent joinder," the Seventh Circuit held. *Id.* Like the repairman in *Faucett*, Green is an in-state defendant, sued in negligence based on the alleged failure of a product whose service was not his responsibility. As in *Faucett*, Green's uncontradicted declaration is sufficient to establish fraudulent joinder.

Plaintiffs' only defense against the fraudulent joinder theory is to advance an entirely new theory of liability for Green. Introducing facts that appear nowhere in the complaint, plaintiffs argue that Green was negligent in failing to warn Kasal that casters had failed in other Navigator units, a problem that allegedly caused personal injuries twice before. According to plaintiffs,

> It is undisputed that he trained Aurora employees, and supported surgeons and their staff in using the Stryker Navigator system. In this training, he never informed Mary Kasal of the well-known caster failures. His failure to warn of a known hazard is negligence.

Br. in Supp. of Pls.' Mot. to Remand (Dkt. 18) at 6. The complaint, by contrast, advances a completely different theory: that Green's negligence caused the caster to fail and thus resulted in Mary Kasal's alleged injuries. Compl. (Dkt. 1-1) ¶ 14.

The allegations of failure to warn are not properly before the court. Plaintiffs have not proposed to amend their complaint, nor could they at this juncture without leave of the court. *See* Fed. R. Civ. P. 15(a)(2). A defendant asserting fraudulent joinder "need not negate any possible theory that [the plaintiff] might allege in the future: only his present allegations count."

*Poulos*, 959 F.2d at 74.[2] And the complaint's present allegations have nothing to do with a duty to warn.

Liability arising from failure to warn is a distinct theory in negligence. *See, e.g.*, *Kessel v. Stansfield Vending, Inc.*, 2006 WI App 68, ¶¶ 18–22, 291 Wis. 2d 504, 714 N.W.2d 206. The same four elements of negligence—(1) duty of care, (2) breach, (3) causal connection between the conduct and injury, and (4) actual damage—apply, but the applicable "duty of care" is the duty to warn. *Id.* ¶¶ 15, 19. Like any negligence theory, the conduct has to cause the injury—but plaintiffs offer no indication as to how a warning could have prevented Mary Kasal's injury here.

Plaintiffs cannot concoct new and unsupported theories of liability to avoid federal jurisdiction. Miles Green is not a proper defendant. Because Green has been fraudulently joined, the Court should "disregard, for jurisdictional purposes," his citizenship and dismiss him from this action. *Schur*, 577 F.3d at 763.

## II. Sentry Is Properly Realigned as a Plaintiff Due to its Subrogated Interest, Even If Plaintiffs Seek to Extinguish its Subrogation Right.

Sentry appears in this lawsuit because of its subrogated interest as the worker's compensation carrier. This status is clear in the complaint, which recognizes that "Sentry may be entitled to share in the proceeds of any recovery pursuant to Wis. Stat. § 102.29," Compl. ¶ 21; in Sentry's answer, which advances its "equal right to assert a claim for recovery against liable third parties," Dkt. 1-2 at 51; in Sentry's cross-claim, which seeks recovery directly from

---

[2] For this same reason, subject matter jurisdiction is unaffected by the possibility of plaintiffs amending their complaint to name "the individual who serviced the Navigator after the subject incident and took custody of the broken caster." Br. in Supp. of Pls.' Mot. to Remand (Dkt. 18) at 8. In any event, it is unclear how the identity of whoever serviced the Navigator *after* the incident would affect plaintiffs' claims.

Stryker and Green, Dkt. 1-2 at 46; and even in the parties' Rule 26(f) report, which notes that Sentry "shall abide by the deadlines for the plaintiffs for its claim of subrogation," Dkt. 23 at 3.

The fact that Sentry has been named as a defendant does not defeat diversity jurisdiction: as a subrogated party, it should be realigned as a plaintiff. *See Lampe v. Genuine Parts Co.*, 463 F. Supp. 2d 928, 933-34 (E.D. Wis. 2006) (citing *Harvey v. Marriott Corp.*, 680 F. Supp. 1289, 1290 (E.D. Wis. 1988)); *Vandervest v. Wis. Cent. Ltd.*, 936 F. Supp. 601, 605 (E.D. Wis. 1996) ("Where plaintiff's insurer was named as a defendant solely to protect its subrogated interest in plaintiff's action and no claim for relief was asserted against the insurer, the citizenship of the insurer was not considered by the court for purposes of determining the existence of complete diversity."). "Realignment is proper when the court finds that no actual, substantial controversy exists between parties on one side of the dispute and their named opponents." *Am. Motorists Ins. Co. v. Trane Co.*, 657 F.2d 146, 149 (7th Cir. 1981)*; see also Eichmann v. Hunter Automated Mach.*, 167 F. Supp. 2d 1070, 1072 (E.D. Wis. 2001) (disregarding a nominal defendant for purposes of evaluating diversity jurisdiction); *Frahm v. Marshfield Clinic*, No. 07-C-364, 2007 WL 3287841, at *2 (W.D. Wis. Nov. 7, 2007) (realigning subrogated health insurers to be plaintiffs).

Realignment is appropriate here, because there is no "actual, substantial controversy" between plaintiffs and Sentry. Plaintiffs disagree, insisting that they "seek to have the Court extinguish any subrogation or reimbursement rights that Sentry may have had"—and that this "actual, substantial controversy" prevents Sentry's realignment. Br. in Supp. of Pls.' Mot. to Remand (Dkt. 18) at 7; *see also* Compl. (Dkt. 1-1) ¶¶ 23–24 (alleging that Sentry's "subrogation interests should be foreclosed in equity and in law" due to its and Aurora's "failure to cooperate").

But plaintiffs do not have an independent cause of action against Sentry; rather, the Kasals and Sentry are both advancing claims *against defendants*. Section 102.29 gives recipients of worker's compensation benefits (*i.e.* the Kasals) the right to bring a tort claim against a third-party (*i.e.* Stryker)—and it extends that same right to an "employer or compensation insurer" (*i.e.* Sentry) that has paid a worker's compensation claim. Wis. Stat. § 102.29(a). Thus the Kasals and Sentry both derive the right to bring their claims from the same statute. *See* Compl. (Dkt. 1-1) ¶ 21. This statute also provides that "each party shall have an equal voice in the prosecution of the claim, and any disputes arising shall be passed upon by the court before whom the case is pending." Wis. Stat. § 102.29(b). Although plaintiffs cite this "disputes" language as the basis for their "cause of action" against Sentry, Dkt. 18 at 7, this provision does not create a right of action between the Kasals and Sentry.

Sentry is properly realigned as a plaintiff because "any disputes arising" between the Kasals and Sentry pertain only to the distribution of whatever damages may be *paid by the defendants*. The Kasals and Sentry are seeking to recover from the same pot; a conflict over their share of the recovery does not transform Sentry into a defendant. Indeed, Sentry answered *the Kasals'* claim by seeking judgment against *Stryker and Green*. *See* Dkt. 1-2 at 51.

Furthermore, the very evidence provided by plaintiffs shows the absence of any actual controversy. Plaintiffs allege that their "counsel has repeatedly requested information from Sentry to assist the plaintiff with her third party claim against Stryker," and that "Sentry has failed to assist the plaintiff in preserving evidence, investigating her claim, and protecting her rights." Br. in Supp. of Pls.' Mot. to Remand (Dkt. 18) at 7. The emails tell a very different story: Sentry's claims representative Erin Stroik provided same-day responses to plaintiffs' counsel, who acknowledged that Sentry presumably did not even have the information he was

requesting. *See* Aff. of Victor Harding (Dkt. 20) Exs. D, E, H, I. Stroik acknowledged that she, too, was having trouble obtaining information from Aurora, despite her efforts at "actively following up with" them. *See id.* Ex. I. The very notion that there is an "actual, substantial controversy" based on a failure to cooperate is belied by plaintiffs' own submissions.

In sum, when realigned as a plaintiff, Sentry—a Wisconsin citizen—does not defeat diversity with Stryker, a defendant and citizen of Michigan.

### III.  Plaintiffs Have Not Even Opposed the Motion to Dismiss Miles Green, Which Should Be Granted.

The existing complaint fails to state a claim upon which relief can be granted against Miles Green, who has moved to dismiss. *See* Dkt. 6 & 7. Plaintiffs never responded to that motion. Instead, they acknowledge it in a footnote to their remand motion, which says:

> Defendant Miles Green has filed a motion to dismiss. It is plaintiff's position that a decision on remand will affect the decision to dismiss. Presumably, if the Court remands the case, it will have no standing to dismiss Mr. Green. For these reasons, Plaintiff is not filing a separate brief opposing the motion to dismiss.

Br. in Supp. of Pls.' Mot. to Remand (Dkt. 18) at 1 n.1.

Plaintiffs have the order inverted: it is not that "a decision on remand will affect the decision to dismiss," but the other way around. The court cannot remand the case without considering the motion to dismiss, because subject matter jurisdiction hinges in part on whether Green remains a party. In any event, the motion to dismiss was filed before the motion to remand, and should be considered first.

Plaintiffs have gambled that they will prevail on their motion to remand and need not respond to the motion to dismiss. That is a losing proposition. The motion to dismiss should be granted as unopposed. *See Nealy v. Nelsen*, No. 11-C-0541, 2013 WL 3924358, at *4 (E.D. Wis.

July 29, 2013) ("By failing to respond to the motion . . . , he concedes that the motion has merit.").

## CONCLUSION

For the reasons set forth above, in Stryker's Notice of Removal, in Green's Motion to Dismiss, and in all related pleadings, defendants respectfully request that the motion to dismiss Miles Green be granted; that Green be dismissed from this lawsuit, with prejudice; that the motion to remand be denied; and that this court retain jurisdiction over this action.

Dated: August 31, 2017

Respectfully submitted,

*s/ Dustin B. Brown*
Josh Johanningmeier (1041135)
Dustin B. Brown (1086277)
GODFREY & KAHN, S.C.
One East Main Street, Suite 500
P.O. Box 2719
Madison, WI 53701-2719
Phone: 608-257-3911
Fax:     608-257-0609
Email: jjohanni@gklaw.com
            dbrown@gklaw.com

*Attorneys for Defendants Stryker Corp. and Miles Green*

17695177.