# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| MARY KASAL and GEORGE KASAL,<br><br>Plaintiffs,<br>v.<br><br>STRYKER CORPORATION, AA INSURANCE COMPANY, MILES W. GREEN, BB INSURANCE COMPANY, SENTRY INSURANCE A MUTUAL COMPANY, and AURORA HEALTH CARE METRO INC.,<br><br>Defendants. | Case No. 17-CV-1001-JPS<br><br>**ORDER** |

**1.      INTRODUCTION**

On July 19, 2017, Defendant Stryker Corporation ("Stryker") removed this matter to this Court from Milwaukee County Circuit Court. (Docket #1). In its notice of removal, Stryker invoked the Court's diversity jurisdiction. *Id.* at 1. Though the parties appear non-diverse on the face of the complaint, Stryker maintains that certain parties were fraudulently joined to defeat diversity, and others should be realigned as plaintiffs. *Id.* at 2-8. On July 26, 2017, Defendant Miles W. Green ("Green"), a former Stryker employee who is represented by the same counsel, filed a motion to dismiss himself from this action for Plaintiffs' failure to state any viable claims against him. (Docket #6). Stryker further requests that Defendant Sentry

Insurance, A Mutual Company ("Sentry") be realigned as a plaintiff in this matter. (Docket #25 at 7-10).[1]

On August 10, 2017, Plaintiffs timely filed a motion to remand this action to state court. (Docket #17); 28 U.S.C. § 1447(c). Stryker responded to that motion, and replied in support of the motion to dismiss, on August 31, 2017. (Docket #25). On September 14, 2017, Plaintiffs submitted a reply in favor of their motion to remand. (Docket #29). Though the issues raised by both motions are intertwined, because the remand question goes to the Court's jurisdiction, Plaintiffs' motion must be addressed first.[2]

## 2. RELEVANT FACTS

The material facts are undisputed. They are drawn from Plaintiffs' complaint, (Docket #1-1), and Green's affidavit, (Docket #1-3). Plaintiffs, Green, Sentry, and Defendant Aurora Health Care Metro, Inc. ("Aurora") are all citizens of Wisconsin, while Stryker is a citizen of Michigan. On May 11, 2016, Plaintiff Mary Kasal ("Mary") was employed by Aurora. While

---

[1] On September 5, 2017, Green filed another motion to dismiss, this time directed at the crossclaim pleaded against him by Sentry. (Docket #26). The crossclaim, and Green's motion to dismiss it, are largely identical to the prior motion. *See id.* Both of Green's motions will be disposed of similarly.

[2] Stryker's arguments to the contrary are unsupported by citation to any law. (Docket #25 at 10). As a logical proposition, the Court would have no power to dismiss Green if it lacked jurisdiction in the first instance. *See Estate of Minko ex rel. Minko v. Heins*, No. 14-CV-210-WMC, 2014 WL 1515557 at *1 n.1 (W.D. Wis. Apr. 18, 2014) ("In *Lister v. Stark*, 890 F.2d 941 (7th Cir. 1989) . . . the Seventh Circuit affirmed a district court's grant of defendant's motion to dismiss and denial of plaintiff's motion to remand issued in the same opinion, but did not address whether the district court was required to consider those motions in any particular order. Still, the correct order is elementary: if the district court had determined that it lacked subject matter jurisdiction, and granted plaintiff's motion to remand, any other decision by that court, certainly including a motion to dismiss, would be null and void.").

working at Aurora-owned St. Luke's Hospital, Mary was injured when a piece of equipment called a "Navigator" tipped over onto her. Plaintiffs allege that the tipping was caused by the failure of one or more of the casters on which the Navigator sat. They further allege that the Navigator was manufactured and owned by Stryker and leased to Aurora at the time of Mary's injury. The incident caused damages to Mary in the form of personal injuries and lost wages, and to Plaintiff George Kasal in the form of loss of Mary's society and companionship.

Plaintiffs assert three causes of action. The first is for negligence against Stryker and Green. Plaintiffs include Green in this claim based on their allegation that he "performed and oversaw service and maintenance of Stryker machinery at Aurora," presumably to include the Navigator. (Docket #1-1 at 5). In his affidavit, Green maintains that he was merely a sales representative for Stryker, "interfac[ing] with hospital and medical personnel to sell and lease Stryker equipment [and] support[ing] surgeons and their staff in using Stryker equipment during a case." (Docket #1-3 at 2). Green avers that he was not responsible for maintenance of any Stryker equipment, including the Navigator; that duty was laid on a different department within Stryker.

Plaintiffs' second cause of action is against Stryker alone for products liability, namely producing the Navigator with defective casters. Plaintiffs' final claim is stated against Sentry and Aurora for failing to cooperate in the prosecution of her tort claims herein, thus extinguishing their right to subrogation (both parties had provided worker's compensation benefits to Mary).

3.  **ANALYSIS**

As noted above, Plaintiffs have asked the Court to remand this action to state court because the parties are non-diverse. (Docket #18 at 1). This is apparent on the face of their complaint; Plaintiffs, Green, and Sentry are all citizens of Wisconsin, while Stryker is from Michigan. In an attempt to remain in federal court, Stryker argues that neither Green's nor Sentry's presence actually undermines diversity in this case, raising separate arguments as to each. The Court begins with Green.

Stryker asserts that Green has been fraudulently joined in this action to defeat diversity jurisdiction. The fraudulent joinder doctrine is an exception to the requirement of complete diversity. *Morris v. Nuzzo*, 718 F.3d 660, 666 (7th Cir. 2013). The doctrine provides that "an out-of-state defendant's right of removal premised on diversity cannot be defeated by joinder of a nondiverse defendant against whom the plaintiff's claim has no chance of success." *Id.* (quotation omitted). The Seventh Circuit instructs that

> [t]o establish fraudulent joinder, a removing defendant must show that, after resolving all issues of fact and law in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant. If the removing defendant can meet this heavy burden, . . . the federal district court considering removal may disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction.

*Id.* (citations and quotations omitted). Put another way, Stryker must show that there is no reasonable possibility that Plaintiffs can state a cause of action against Green in state court. *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992); *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993).

The standard of review applied to fraudulent joinder is even weaker than that applied to a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). As the Third Circuit explains, "it is possible that a party is not fraudulently joined, but that the claim against that party ultimately is dismissed for failure to state a claim upon which relief may be granted." *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 852 (3d Cir. 1992) (finding error when "the district court [converted] its jurisdictional inquiry into a motion to dismiss"). Instead, this Court is bound only to determine whether "the claims against [Green] were not even colorable, *i.e.*, were wholly insubstantial and frivolous." *Id.* Although Stryker's burden in asserting fraudulent joinder is heavy, the Seventh Circuit has held that "it need not negate any possible theory that [Plaintiffs] might allege in the future: only [their] present allegations count." *Poulos*, 959 F.2d at 74.

Plaintiffs assert that they state a valid claim against Green for failing to warn Mary of the known danger presented by caster failures on Navigator machines. This is based on Green's affidavit testimony provided in conjunction with the motion to dismiss. Stryker responds that this failure-to-warn theory is not the negligence claim Plaintiffs pleaded. Rather, Plaintiffs have alleged that Green's job duties included service and maintenance of the Navigator, and that he was negligent in performing those tasks. Stryker insists, citing *Poulos*, that Plaintiffs cannot rely on their new failure-to-warn theory to avoid application of fraudulent joinder; again, "only [their] present allegations count." *Id.*

The standards applied to fraudulent joinder appear to sit in tension. *Morris* provides that fraudulent joinder applies, "after resolving all issues of fact and law" in Plaintiffs' favor, only if they "cannot establish **a** cause of action" against Green. *Morris*, 718 F.3d at 666 (emphasis added). Though

Stryker weakly contends that Plaintiffs have not properly alleged a failure-to-warn negligence theory, it is clear that Plaintiffs *could* do so under Wisconsin law. *See Kessel ex rel. Swenson v. Stansfield Vending, Inc.*, 714 N.W.2d 206, 212 (Wis. Ct. App. 2006); *Schwartz v. State Farm Mut. Auto. Ins. Co.*, 174 F.3d 875, 878 (7th Cir. 1999) (a court must turn to state law to predict whether a cause of action could be stated). Further, as emphasized in *Batoff*, the Court is constrained to assess whether the failure-to-warn theory is "wholly insubstantial and frivolous," not whether Plaintiffs could state a valid claim against Green. *Batoff*, 977 F.2d at 852. *Poulos*, by contrast, seems to require that the "cause of action" contemplated in *Morris* be expressly pleaded, not merely a possibility. *Poulos*, 959 F.2d at 74.

A closer review of *Poulos* suggests that its holding is narrower than Stryker believes. Gus Poulos ("Poulos"), a sales representative for Naas Foods, Inc. ("Naas"), sued Naas pursuant to the Wisconsin Fair Dealership Law ("WFDL") for terminating his employment. *Id.* at 70. Poulos also sued Ranks, Hovis, McDougall, PLC Group ("RHM"), which owned Naas. *Id.* Poulos and RHM were citizens of Illinois, while Naas was based in Indiana. *Id.* The case proceeded in Wisconsin state court through discovery and on to dispositive motion practice. *Id.* The state court granted summary judgment to RHM because, on the facts adduced by the parties, it could not be held liable under the WFDL. *Id.* At that point, the parties became diverse and Naas removed the case. *Id.* Poulos moved to remand, arguing that RHM should still factor into the jurisdictional inquiry despite its dismissal, while Naas alleged fraudulent joinder. *Id.* at 70-71.

*Poulos* opens its fraudulent joinder discussion by citing all of the same standards as *Morris*. *Id.* at 73 ("The defendant must show that, after resolving all issues of fact *and law* in favor of the plaintiff, the plaintiff

cannot establish a cause of action against the in-state defendant. . . . At the point of decision, the federal court must engage in an act of prediction: is there any reasonable possibility that a state court would rule against the non-diverse defendant?") (emphasis in original). It went on to analyze Poulos' specific arguments:

> Turning now to the merits, we agree with the district court that Poulos failed to state any claim against RHM. Under Wisconsin law, a parent corporation may be liable for its subsidiary's delicts if "'applying the corporate fiction would accomplish some fraudulent purpose, operate as a constructive fraud, or defeat some strong equitable claim.'" *Consumer's Co-op v. Olsen*, 142 Wis.2d 465, 475, 419 N.W.2d 211, 214 (1988) (quoting *Milwaukee Toy Co. v. Industrial Comm'n*, 203 Wis. 493, 496, 234 N.W. 748 (1931)). Although Poulos alleged that RHM controlled Naas, he alleged no impropriety or disregard of Naas' corporate form. Perhaps more importantly, there is simply no indication that RHM's presence in the suit was required to avoid any possible fraud: Poulos did not allege (nor, truthfully, could he allege) that the assets of Naas would be insufficient to satisfy a judgment on his claims.
>
> Poulos argues that some facts might turn up to support a claim against RHM. He reminds us that the Wisconsin judge gave him leave to reinstate RHM should such facts turn up. Naas disputes Poulos' characterization of the court's action, arguing that the judge merely indicated his potential willingness to reconsider, but the characterization doesn't matter. Although Naas bears a heavy burden to establish fraudulent joinder, it need not negate any possible theory that Poulos might allege in the future: only his present allegations count. If Poulos' theory were right, he could defeat diversity jurisdiction by joining his grandmother as a defendant—surely some set of facts might make her liable.
>
> Based on the allegations in his complaint, Poulos had no chance of recovering damages from RHM in a Wisconsin court. Moreover, at no point in the state or federal proceedings did Poulos attempt to fill the gaps in his

complaint. Thus we may conclude that the joinder of RHM
was fraudulent without deciding whether Poulos could have
cured the problem with his complaint by amending it while
in federal court.

*Id.* at 73-74. (citations omitted).

Viewed in this context, *Poulos*' line about "present allegations" does not apply to the instant case. This action is still at the pleading stage, and the only factual material Plaintiffs rely on for their failure-to-warn theory is that provided by Green himself in his affidavit. It appears that Plaintiffs could truthfully allege Green's liability on such a theory. Further, Poulos' claim against RHM was subject to discovery, considered by the state court, and rejected on its merits. By contrast, Plaintiffs' failure-to-warn theory has not been tested in any fashion. Thus, *Poulos*' concern about waiting indefinitely for facts be discovered which support a defendant's liability—*i.e.*, a party naming their own grandmother—need not materialize. Plaintiffs can credibly assert a cause of action against Green.[3]

On the state of the complaint, Stryker is correct that the failure-to-warn theory is not clearly pleaded. Under *Morris* and *Batoff*, and a more

---

[3] Stryker's primary citation on fraudulent joinder, *Faucett*, is inapposite. There, the plaintiff was injured by a piece of mining equipment. *Faucett v. Ingersoll-Rand Mining & Mach. Co.*, 960 F.2d 653, 654 (7th Cir. 1992). He sued the machine's manufacturer and a repairman who worked at the mine. *Id.* The repairman, a citizen of the same state as the plaintiff, offered unrebutted testimony that he "had absolutely nothing to do" with repairing the machine in question. *Id.* at 655. The district court, and the Court of Appeals, found that the repairman was fraudulently joined, and thus the action could remain in federal court despite his continue presence in the case. *Id.* While Green's affidavit establishes that he was not responsible for maintaining the Navigator, he does not say that he had nothing to do with the machine at all. Instead, Green concedes that he sold Stryker equipment, including Navigators. Green's position is not nearly as stark as the *Faucett* repairman.

complete appreciation of *Poulos*, the Court is not convinced that this matters when resolving the motion to remand. Construing all issues of fact *and law* in Plaintiffs' favor, there is at least a reasonable probability that Plaintiffs could state a cause of action against Green in Wisconsin court. The Seventh Circuit teaches that "federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009). The Court concludes, then, that Green is not fraudulently joined to this action. Green's presence destroys diversity amongst the parties and requires remand, and Plaintiffs' motion to that effect must be granted. Stryker's arguments with regard to realigning Sentry as a plaintiff are thus rendered moot.

A final note on Plaintiffs' motion. The remand statute permits a court to award fees and costs to a party that succeeds in obtaining remand. 28 U.S.C. § 1447(c). These amounts may be assessed "only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).[4] The laborious analysis provided above was only necessary because Plaintiffs' complaint was so poorly pleaded. In fact, their request for remand was saved, by the skin of its teeth, by the overwhelmingly favorable standard of review. Stryker had more than an objectively reasonable basis to seek removal. Plaintiffs' request for fees and costs will be denied.

---

[4]For unknown reasons, all of Plaintiffs' citations on the fee issue predate *Martin* and apply a now-incorrect standard. *See* (Docket #18 at 9). *Martin* has been in force for twelve years. Plaintiffs' counsel should take care to ensure their assertions of law are current to the present date (or at least this decade).

### 4. CONCLUSION

In light of the foregoing, Plaintiffs' motion to remand must be granted. Their request for fees and costs will be denied. Both of Green's motions to dismiss will be denied as moot.

Accordingly,

**IT IS ORDERED** that Plaintiffs' motion to remand (Docket #17) be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that Defendant Miles W. Green's motions to dismiss (Docket #6 and #26) be and the same are hereby **DENIED as moot**.

The Clerk of the Court is directed to take all appropriate steps to effectuate the remand of this case back to the Milwaukee County Circuit Court.

Dated at Milwaukee, Wisconsin, this 19th day of September, 2017.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge